IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01657-PAB-NRN

ALEJANDRO GUERRERO,

Plaintiff,

v.

CAROL LINGREN, AHSA,
FREE, Prison Guard, and
UNKNOWN PRISON GUARD,

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANT LINDGREN'S MOTION TO DISMISS (Dkt. #52)
and
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. #55)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This prisoner civil rights case is before the Court pursuant to Orders (Dkt. ##54 &

56) issued by Chief Judge Philip A. Brimmer referring Defendant Carol Lindgren's

Motion to Dismiss (Dkt. #52) and Motion for Early Summary Judgment. (Dkt. #55.)

Plaintiff Alejandro Guerrero, proceeding pro se,[1] filed a response (Dkt. #59), Ms.

---

[1] Because Plaintiff is not represented by counsel, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (the court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927

Lindgren filed a reply (Dkt. #61), and Plaintiff filed what the Court construes as a sur-reply. (Dkt. #62.) On September 28, 2021, the Court heard argument on the subject motion. (*See* Dkt. #67.) The Court has taken judicial notice of the Court's file and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is **RECOMMENDED** that the subject motions be **GRANTED**.

## BACKGROUND[2]

**I. Procedural History**

Plaintiff is in the custody of the Bureau of Prisons ("BOP") and currently incarcerated in the United States Penitentiary—Florence High in Florence, Colorado ("USP—Florence"). He initiated this lawsuit on June 8, 2020 by filing a Complaint (Dkt. #1) against Ms. Lindgren, an individual named "Free," whom Plaintiff identifies as a "Federal Guard," and a third, unknown individual. Plaintiff asserted one claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against all three defendants.

On June 9, 2020, Magistrate Judge Gordon P. Gallagher ordered Plaintiff to amend his Complaint to cure certain pleadings deficiencies. (Dkt. #4.) When Plaintiff did not comply with the order, Judge Gallagher recommended to Judge Lewis T. Babcock

---

F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

[2] The following factual summary is based on the pleadings, the parties' briefs on the Motions, and documents submitted in support thereof. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

that the action be dismissed. (Dkt. #12.) Judge Babcock accepted that recommendation on September 11, 2020 (Dkt. #14), but after Plaintiff filed an objection (Dkt. #18) citing the coronavirus pandemic and his difficulties speaking English as the reasons he did not timely amend his Complaint, Plaintiff was given another chance. (*See* Dkt. #19.) Plaintiff filed an Amended Complaint on January 25, 2021. (Dkt. #31.) The Amended Complaint added "A. Stancil, Former Warden" and an "Unknown Nurse/Prison guard/Medical Administrator" as parties.

On February 23, 2021, the two newly added defendants were dismissed without prejudice under Rule 8, and the case was drawn to Chief Judge Brimmer and the undersigned. (Dkt. #33.)

On May 6, 2021, Plaintiff filed a Second Amended Complaint (Dkt. #47), which is the operative pleading. Ms. Lindgren, the only defendant who has been served, filed the subject Motions in response.

## II. Plaintiff's Second Amended Complaint

The following facts are drawn from Plaintiff's Second Amended Complaint. Plaintiff had a severe allergic reaction to pain medication he was given that caused him to uncontrollably vomit blood. He activated his cell's distress signals, and Defendant Free and another guard responded four or five hours later. The guards witnessed Plaintiff vomiting blood but took no measures other than contacting the night nurse on duty. Defendant Free told Plaintiff that medical staff was not available at night and that Plaintiff would have to wait until 7:00 a.m. to be treated. Plaintiff's condition worsened and eventually he was taken from his cell and placed in a chemical storage closet.

Upon discovering how ill Plaintiff was, other inmates convinced guards to permit them to escort Plaintiff in a wheelchair to the infirmary, where they encountered Ms. Lindgren. Ms. Lindgren insisted that Plaintiff was malingering and instructed that he be taken back to his cell. Luckily, the inmates encountered a BOP lieutenant and explained to him that Plaintiff had been throwing up all night and was having trouble breathing. The lieutenant returned Plaintiff to the infirmary and directed Ms. Lindgren to arrange outside medical care.

Plaintiff asserts an Eighth Amendment *Bivens* claim against Ms. Lindgren, alleging that she was deliberately indifferent to his serious medical needs.

## MOTION FOR SUMMARY JUDGMENT

### I. Legal Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court

must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. The Prison Litigation Reform Act ("PLRA")

The PLRA commands: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Any prisoner who seeks to bring a claim involving 'general circumstances or particular episodes' of prison life must first exhaust the administrative remedies available to him in prison." *May v. Segovia*, 929 F.3d 1223, 1226–27 (10th Cir. 2019) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Jones v. Bock*, 549 U.S. 199, 211 (2007)). "Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (internal citations omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim [or any other federal claim] under [the] PLRA for failure to exhaust his administrative remedies," and the "doctrine of substantial compliance does not apply." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (internal quotation marks omitted).

However, a prisoner must exhaust only *available* administrative remedies. 42 U.S.C. § 1997e(a). An available remedy is one "capable of use for the accomplishment of a purpose." *See Booth v. Churner*, 532 U.S. 731, 737 (2001). For purposes of PLRA exhaustion, an administrative remedy is unavailable "when a prison official inhibits an

inmate from utilizing an administrative process through threats or intimidation," *Tuckel v. Grover*, 660 F.3d 1249, 1252-53 (10th Cir. 2011), or "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy," *Little*, 607 F.3d at 1250. Indeed, "courts [ ] are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). Once Ms. Lindgren demonstrates that Plaintiff did not exhaust his administrative remedies, the onus is on Plaintiff "to show that remedies were unavailable to him." *May*, 929 F.3d at 1234 (internal quotation marks omitted).

## III. The BOP's Administrative Remedy Program

The BOP's four-tiered Administrative Remedy Program for inmate grievances, which is codified at 28 C.F.R. § 542.10, *et seq.*, is outlined in Ms. Lindgren's Motion for Summary Judgment. (*See* Dkt. #55 at 2–3, ¶¶ 3–8.) The first tier requires informal resolution with prison staff, which the prisoner requests with a form commonly known as a BP–8. *See* 28 C.F.R. § 542.13(a). These requests are not tracked. *Id.* The regulations allow the prisoner twenty days from the date of the incident to complete the informal resolution and file a formal Request for Administrative Remedy, if necessary. *See* 28 C.F.R. § 542.14. The prisoner must submit the formal inquiry, known as a BP–9 request, at the institution where the prisoner is incarcerated. *Id.* If dissatisfied with the response to the BP-9, the prisoner may appeal to the Regional Director by filing a Regional Office Administrative Remedy Appeal, also known as a BP–10 request, within twenty days of the warden's dated response. *See* 28 C.F.R. § 542.15(a). Finally, the prisoner may file a Central Office Administrative Remedy Appeal, known as a BP–11

request, with the BOP's Office of General Counsel within thirty days of the Regional

Office's denial. *Id.* The Administrative Remedy Coordinator at any level may

reject and return to the inmate without response a Request for Administrative Remedy

or appeal that does not meet procedural requirements as outlined in the Code of

Federal Regulations. *See* 28 C.F.R. § 542.17(a)).

## IV. Plaintiff's Grievances

The BOP regularly maintains records of inmates' administrative complaints in a

database known as SENTRY. (*See* Dkt. #55 at 4, ¶ 9.) Ms. Lindgren supplied, through

the Declaration of Paula Trujillo, a BOP employee working as a Paralegal at the Federal

Correctional Complex ("FCC") in Florence, Colorado, a summarized account of the

seven requests for administrative remedies or appeals Plaintiff filed since his placement

in BOP custody on May 8, 2009, through March 24, 2020. (*See id.* at 4–7, ¶¶ 10–16.)

First, Plaintiff filed Administrative Remedy 961798-F1 (BP-9) on December 6,

2018, in which he stated that he had an allergic reaction to medication and did not

receive medical attention. (*Id.* at 4, ¶ 10.) This administrative remedy was rejected as

procedurally deficient. Plaintiff was informed, "You must write your issue on the BP-229

form, you may submit one continuation page if more room is needed. Do not write refer

to the BP8, write issue and request only." It was also flagged under STATUS REASON:

ONE," which means, "You may only submit up to one letter size (8.5 x 11) continuation

page."

Second, Plaintiff filed Administrative Remedy 961798-F2, also a BP-9, on

January 7, 2019, in which he again stated that he had an allergic reaction to medication

and did not receive medical attention. (*Id.* at 4, ¶ 11.) This was also rejected: "BP-9 still

does not explain your issue of allergic reaction, etc. Should be worded similar to BP8.

Write entire issue on BP9, include 1 continuation page if needed."

Plaintiff filed a third BP-9, Administrative Remedy 961798-F3, on January 29,

2019, for the same complaints. (*Id.* at 4–5, ¶ 12.) Plaintiff received a response from the

Warden, stating

> [A]ll staff are held to a high standard of treating inmates fairly, impartially, and humanely. Mistreatment of inmates is not tolerated. Therefore, the information presented in your Administrative Remedy will be forwarded to the appropriate Bureau of Prisons component for review. However, inmates are not entitled to receive information regarding the outcome of an investigation.

(*Id.* at 5.)

Fourth, Plaintiff filed Appeal 961798-R1 at the Regional Office level on April 3,

2019, in which he stated that he had an allergic reaction to medication and did not

receive medical attention. (*Id.*, ¶ 13.) This appeal was rejected as procedurally deficient

because Plaintiff did not sign the appeal. The rejection was also coded "REJ STATUS

REASON: RSR," which means "You may resubmit your appeal in proper form within 10

days of the date of this rejection notice."

Fifth, Plaintiff filed Appeal 961798-R2 at the Regional Office level on May 6,

2019, stating that "[n]o redress was provided regarding my complaint" and asking for a

"written response as to staff's misconduct." (*Id.* at 5–6, ¶ 14.) He received a written

response on May 22, 2019, in which the Regional Director agreed with the way the

Warden addressed Plaintiff's concerns, and which advised Plaintiff that he could appeal

to the Office of General Counsel "within 30 days from the date of this response." (*Id.* at

6.)

Sixth, Plaintiff filed Appeal 961798-A1 at the Central Office level on December 3, 2019. (*Id.* at 6, ¶ 15.) This appeal was rejected as procedurally deficient and coded as follows:

> "STATUS CODE: REJ," which means the appeal was rejected; "REJ STATUS REASON: SIG," which means he did not sign the appeal; "REJ STATUS REASON: RAP," which means "You did not provide a copy of your Regional Administrative Remedy Appeal (BP-10) form or a copy of the (BP-10) response from the Regional Director;" "REJ STATUS REASON: UTA," which means "Your appeal is untimely. Central Office appeals must be received within 30 days of the Regional Director's response. This time limit includes mail time;" "REJ STATUS REASON: MEM," which means "You may submit a memo on BOP letterhead from a staff member indicating the delay in filing the appeal is not your fault;" and "REJ STATUS REASON: OTH," which means "Other: SEE REMARKS"—for which the "REMARKS" explained, "Regional Appeal 961798-R2 was denied on 5-22-19, Central Office appeal received on 12-3-2019, 195 days later."

(*Id.*)

Seventh, Plaintiff filed a second appeal, Appeal 961798-A2, at the Central Office level on January 27, 2020, in which he stated that he had an allergic reaction to medication and did not receive medical attention. (*Id.* at 6–7, ¶ 16.) Although this appeal was signed, it was ultimately rejected as procedurally deficient:

> "REJ STATUS REASON: RAP," which means "You did not provide a copy of your Regional Administrative Remedy Appeal (BP-10) form or a copy 7 of the (BP-10) response from the Regional Director;" "REJ STATUS REASON: UTA," which means "Your appeal is untimely. Central Office appeals must be received within 30 days of the Regional Director's response. This time limit includes mail time;" "REJ STATUS REASON: MEM," which means "You may submit a memo on BOP letterhead from a staff member indicating the delay in filing the appeal is not your fault;" "REJ STATUS REASON: OTH," which means "Other: SEE REMARKS"—for which the "REMARKS" explained, "Regional Appeal 961798-R2 was denied on 5-22-19, Central Office appeal received on 12-3-2019, 195 days later. Need staff memo regarding 195 days."

(*Id.*)

## VI. Analysis

Ms. Lindgren argues that she is entitled to summary judgment because Plaintiff's Eighth Amendment claim has not been properly exhausted. Ms. Lindgren acknowledges that Plaintiff did file seven requests for administrative remedies or appeals related to the allegations that he was not properly treated after his violent allergic reaction to medication. However, she points out that his two BP–11 requests, which were filed with the Central Office and constitute the final stage of the BOP's grievance process, were denied on procedural grounds. Specifically, Appeal 961798-A1 was deemed procedurally defective due to his failure to sign the document, his failure to attach copies of the BP-10 form and the BOP's response, and the untimeliness of the filing. As to the last point, it is undisputed that this appeal was filed more than six months after Plaintiff's last administrative submission.

Appeal 961798-A2, which was submitted on January 27, 2020, was denied as procedurally defective on similar grounds. Plaintiff again failed to provide copies of his BP-10 form and the BOP's subsequent response. Moreover, the appeal was filed more than 30 days following the Regional Director's response. As with the previous denial, Plaintiff did not follow up to provide any explanation for the delay.

In his response (Dkt. #59) and sur-reply (Dkt. #62), Plaintiff does not contest Ms. Lindgren's statement of material facts, but instead appears to argue that he was allowed to proceed to litigation pursuant to 28 C.F.R. § 542.18, which provides:

> If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an

appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.

In Plaintiff's view, the Central Office did not respond to the substance of his appeals within the 40-day time period, and he was therefore permitted to file suit.

Defendant Lindgren, on the other hand, argues that this section does not apply because Plaintiff's appeals were never "accepted"; they were denied on procedural grounds, and the deficiencies identified in the rejections were not cured by Plaintiff, despite being given opportunities to do so.

The Court finds that Ms. Lindgren has the better argument. Under 28 C.F.R. § 542.17, any appeal that does not meet the procedural requirements may be rejected and returned to the inmate without response. 28 C.F.R. § 542.17(a). If the defect is fixable, as it was in this case, notice is given to the inmate with the reasons for the rejection so that it can be corrected. 28 C.F.R. § 542.17(b). Only if the inmate is not given an opportunity to correct the defect and resubmit can he appeal the rejection. 28 C.F.R. § 542.17(c).

The Central Office properly rejected Plaintiff's appeals because they did not comply with the BOP's grievance process. Plaintiff does not contend that he did not receive the notices of rejection, which gave him an opportunity to remedy his appeals' shortcomings. Instead, he claims that he mailed a "missive" to the Central Office "establishing that, if the Central [O]ffice did not respond within a 10 or 20 day time span, the complainant . . . would proceed to on to the District Court." (Dkt. #62.) The Court is at a loss as to what this means. Plaintiff does not specify when this letter was sent (the

BOP states that it has no record of receiving it) or whether he ever addressed the main problem with his appeals: the fact that they were, on their face, filed out of time. Moreover, Plaintiff cannot unilaterally dictate to the BOP how or when to act. Accordingly, he did not properly exhaust his claims. *See Woodford v. Ngo,* 548 U.S. 81, 90–91, (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

To the extent that he claims that the administrative remedies were unavailable, Plaintiff has failed to meet his burden of raising a genuine question of fact as to whether he was prevented from exhausting his administrative remedies by prison officials. His responses do not allege, much less establish via competent summary judgment evidence creating a genuine dispute of material fact, that the BOP's grievance program "operates as a simple dead end" "incapable of providing relief"; that the BOP's procedures are so "opaque" that "no ordinary prisoner can discern or navigate" them; or that prison administrators thwarted him from taking the grievance process through machination, misrepresentation, or intimidation. *See Ross v. Blake*, 578 U.S. 632 (2016) (recognizing these as the three circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief). Plaintiff has not cleared the "high bar to show unavailability." *Williams v. Borrego*, No. 19-cv-00371-RBJ-MEH, 2020 WL 1502296, at *7 (D. Colo. Mar. 30, 2020).

At the hearing on this matter, Plaintiff states that he did not file a timely appeal because he was in the secured housing unit ("SHU") for seven months. He stated that he did not receive the denial for months and when he did, he did not have access to the

appropriate materials he needed to respond. Even if this were properly raised in his response and before the Court, Plaintiff does not appear to have provided this explanation to the BOP, nor does it explain why Plaintiff did not respond to the second rejection notice.

The Court finds that Plaintiff did not properly exhaust his administrative remedies and Ms. Lindgren is entitled to judgment as a matter of law. This means Ms. Lindgren's Motion to Dismiss is moot. However, insofar as a genuine dispute as to any material fact regarding the availability of administrative remedies may be gleaned from the evidence presented by the parties, the Court, out of an abundance of caution, will address Ms. Lindgren's Rule 12(b)(6) arguments.

**MOTION TO DISMISS**

**I. Legal Standard**

    **a. Failure to State a Claim Under Rule 12(b)(6)**

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, I need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

**b. Qualified Immunity**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To resolve a claim of qualified immunity, the Court must consider two elements: (1) whether the plaintiff has alleged a constitutional violation, and (2) whether the violated right was "clearly established" at the time of the violation. *Id.* at 230–31. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry. *Id.* at 232. When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

Qualified immunity is immunity from suit, rather than a mere defense to liability. *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). If a court finds that a defendant is subject to qualified immunity, the court may dismiss with or without prejudice. *Breidenbach v. Bolish*, 126 F.3d 1288, 1294 (10th Cir. 1997); *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1342 (10th Cir. 2000).

## II. Analysis

Ms. Lindgren argues that she is entitled to qualified immunity because Plaintiff has not alleged an Eighth Amendment claim for deliberate indifference. The Court agrees.

The Eighth Amendment's prohibition against cruel and unusual punishment is violated when prison officials "act *deliberately and indifferently* to serious medical needs of prisoners in their custody." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (emphasis added). An Eighth Amendment claim for deliberate indifference involves "a two-pronged inquiry, comprised of an objective and subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The objective component requires a showing that the prisoner's medical need was "sufficiently serious." *Id.* A medical need is considered sufficiently serious when "that condition has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (citation and internal quotation marks omitted). The question is not limited to whether the inmate's symptoms render a medical need sufficiently serious, but also extends to whether the potential harm to the inmate is sufficiently serious. *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005).

Under the subjective component, the plaintiff must establish that the defendant "knew [the plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt*, 199 F.3d at 1224 (internal quotation marks omitted). "The official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have also drawn the inference." *Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018) (alteration omitted). With regard to the subjective component, the question for consideration by the Court is: "were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" *Martinez v. Beggs*, 563

F.3d 1082, 1089 (10th Cir. 2009) (quoting *Mata*, 427 F.3d at 753). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition. Even a brief delay may be unconstitutional." *Mata*, 427 F.3d at 755; *see also Dougherty v. Kansas*, No. 08-3066, 2008 WL 2906505, at *3 (D. Kan. July 24, 2008) (unpublished) ("a delay in providing medical care does not violate the Eighth Amendment unless the plaintiff has suffered 'substantial harm' from the delay"; lifelong handicap, permanent loss, or considerable pain amounts to substantial harm).

Here, Plaintiff alleges that Ms. Lindgren saw him at the prison's medical facility after he was transported there by other inmates, and that, rather than treating him, she improperly instructed the inmates to return Plaintiff to his housing unit. However, Plaintiff then alleges that he encountered a lieutenant, who directed Ms. Lindgren to arrange for outside medical care. This was apparently accomplished. Plaintiff does not allege that he suffered "substantial harm" from this brief delay.

Moreover, Plaintiff does not allege that he informed Ms. Lindgren that he had been throwing up blood all night or that he exhibited any symptoms in front of her. Instead, he alleges that the lieutenant was told of the seriousness of Plaintiff's symptoms. Indeed, Ms. Lindgren's alleged statement that Plaintiff was "malingering" indicates that she subjectively believes that Plaintiff was not at substantial risk of harm.

For these reasons, Plaintiff failed to allege a cognizable constitutional claim against Ms. Lindgren, and she is entitled to qualified immunity.

### RECOMMENDATION

It is hereby **RECOMMENDED** that:

- Defendant Carol Lindgren's Motion for Early Summary Judgment (Dkt. #55) be **GRANTED**, and that

- Defendant Carol Lindgren's Motion to Dismiss (Dkt. #52) be either **DENIED AS MOOT** or **GRANTED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:      October 12, 2021
            Denver, Colorado                    _____
                                                N. Reid. Neureiter
                                                United States Magistrate Judge